UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

G. KEYS PC/LOGIS NP,  *
A SOLE PROPRIETORSHIP,  *
897 GOLF COURSE DRIVE  *
UNIVERSITY CITY, MO 63132  *
  *
and  *
  *
GREGG KEYS, CONSULTANT  *
897 GOLF COURSE DRIVE  *
UNIVERSITY CITY, MO 63132,  *
  *
             Plaintiffs,  *
  *
vs.  * **Civil Action No.: _____**
  * **Calendar _____**
  *
MAISHA POPE  *
1926 SECOND STREET, NW  *
WASHINGTON, DC 20001,  *
  *
             Defendant.  *
  *

## COMPLAINT ON AN ACCOUNT

COME NOW PLAINTIFFS G. Keys/LOGIS NP, a consulting company and Gregg Keys, a consultant (hereinafter called "Keys"), individually and as sole proprietor of G. Keys/LOGIS NP (hereinafter called "LOGIS"), by and through counsel, Andrea R. Littlejohn, and claim as follows:

1. The jurisdiction of the Court is founded on DC Code §11-921 (2007 Ed.) and 28 U.S.C. §§ 1331 and 1332. The matter in controversy exceeds, exclusive of interests and costs, the sum specified by 28 U.S.C. § 1332.

2. That G. Keys/LOGIS NP is a sole proprietorship consulting company

having its principal place of business in the State of Missouri, and is registered to do consulting business in the District of Columbia.

3.     That Keys is a consultant for G. Keys/LOGIS NP, sole owner of G. Keys/LOGIS NP, and a resident of the state of Missouri.

4.     That Defendant Maisha Pope (hereinafter called "Pope"), is a resident of the District of Columbia and the owner of residential property located at 1926 Second Street, NW, Washington, DC 20001, where she currently resides and did reside during the period relevant to the current cause of action.

5.     That in October, 2005, in response to a referral from a mutual friend, Pope contacted Keys in St. Louis, MO and engaged the consultant services of G. Keys/LOGIS NP to prepare a design and development plan for renovating her home at 1926 2nd Street, NW, Washington, DC.

6.     That in October, 2005, Keys came to Washington, DC to examine the residential property, research the neighborhood (a historical preservation area), and perform a building and property survey and preliminary evaluation of the property for a fee of $1,145.00, which fee Pope paid.

7.     That between October 2005 and December 2005, the parties discussed the needs and wishes of Defendant, including, but not limited to the options of (a) engaging a local general contractor from the District of Columbia who would provide his own team of subcontractors to perform home improvement services for the homeowner or (b) employing the construction management (consultation) services of G. Keys/LOGIS NP, with the understanding that G. Keys/LOGIS NP as construction manager would serve as the homeowner's agent only in managing the planning, design, construction, and post-

construction phases of the homeowner's project by assisting and advising the homeowner in locating qualified independent contractors through a bidding process, each of which independent contractors would be required to carry the proper licenses and permits for performing their respective portion of the overall project.

8. That Pope chose to engage the construction management services of G. Keys PC/LOGIS NP rather than hire a local general contractor to provide and oversee the renovation project at her home.

9. That Keys and Pope came to a mutual understanding that as a result of the close friendship which they both shared with the friend who had referred Keys to Pope, Keys would provide Pope with a level of care and service that one would provide to a family member, charge her only a discount of the usual professional fee, and to the extent possible only obtain and provide services and materials at cost.

10. That after several conversations and email communications, in early January, 2006, Keys presented a design and development plan to Pope, which she reviewed for a few weeks, modified as desired, accepted, and approved.

11. That on or about January 6, 2006, the parties entered into a design and management agreement, a copy of which is attached hereto as Exhibit 1, and incorporated herein by reference.

12. That pursuant to the terms of the design and management agreement, G. Keys/LOGIS NP prepared for Defendant a design plan and development package for which Defendant agreed to pay the sum of Ten Thousand Two Hundred Eighty Seven Dollars ($10,287.00). To date only a portion of that fee has been paid by Pope.

13. That the proposed design and development package included, but was not

limited to, a master design plan, explanation of the historical preservation requirements for the area, and a tentative estimate for construction management services to be rendered by G. Keys PC/LOGIS NP.

14. That Plaintiffs provided construction management services over a period of approximately fourteen (14) months, at the discounted rate of Fifty Dollars ($50.00) per hour, but only charged a percentage of that discounted fee in the spirit of community development and goodwill.

15. That Defendant approved and made partial payments of the agreed-upon fee, plus some expenses. The payments on the design phase of the project, totaling Nine Thousand Four Hundred Thirty-One Dollars and Forty-Four Cents ($9,431.44) were made on or about January 24, 2006 and May 9, 2006. Keys had advanced the design fee to Pope's project at it's inception in order to get the initial work started after the building permit was issued, but said fee was subsequently refunded from Pope's subsequent installment payment. There is a remaining balance owed of Eight Hundred Fifty-Five Dollars and Fifty-Six Cents ($855.56) for the design plan and development package.

16. That Pope made several payments for the renovation phase of the project on or about the following dates: August 10, 2006, October 11, 2006, October 17, 2006, December 20, 2006, April 2, 2007, May 10, 2007, May 25, 2007, July 7, 2007, July 27, 2007, and August 6, 2007. Payments for the renovation phase of the project, all of which were applied to direct costs for work done on Ms. Pope's home, totaled approximately Eighty-Seven Thousand Four Hundred Fifty Dollars ($87,450).

17. That the parties established an informal course of dealing due to the friendship basis under which the work relationship proceeded such that the normal practice of billing

on a monthly basis was not consistently practiced by Plaintiffs. Plaintiffs provided construction management services daily and incurred expenses in advance of payment with the understanding that Defendant would make periodic payments as needed. Operating under this implied practice of dealing, Plaintiffs made purchases using its business credit card and its established contacts with wholesalers to place orders of materials and appliances, some of which were partially paid for at the time that Defendant demanded that work be suspended indefinitely. Said financial obligations were incurred solely for, and on behalf of, Defendant.

18.     That as a result of their informal course of dealing, the parties agreed to modifications to the work being done to address several unforeseen conditions which were discovered on the property, unanticipated difficulties which occurred after the project was begun, and changes requested by Defendant. Said modifications included, but were not limited to, removal of an old boiler which was located on the property site, replacement of lead pipes in the water system, repair of damaged or deteriorating sections of the front porch and steps, and relocation of the electrical box. The terms of the agreement between the parties provided for the application of additional costs in the event of "re-designs for unforeseen conditions or owner changes" or "repairs of existing systems as required."

19.     That Plaintiffs placed special orders unique to the needs of Defendant's project, and incurred costs as a result of said special orders, including the following:

> One full glass entrance door (paid for, in storage)
> Finish trim and lumber (paid for, in storage)
> Two vanities (paid for, in storage)
> One vanity mirror (paid for, in storage)
> Stove (50% paid, vendor storage pending payment of balance)
> Washing Machine (50% paid, vendor storage pending balance payment)
> Clothes Dryer (50% paid, vendor storage pending balance payment).

20.     That the amount of money paid by Ms. Pope to date is approximately Ninety-Six Thousand Eight Hundred Eighty-One Dollars and Forty-Four Cents ($96,881.44) out of a tentative/estimated budget of approximately One Hundred Twenty-Seven Thousand Dollars ($127,000), plus expenses.

21.     That a formal accounting of the expenditures made on Ms. Pope's project through and including August 15, 2007 reports that a total of One Hundred Six Thousand Six Hundred Eighty-Two Dollars and Forty-Nine Cents ($106,682.49) was spent on the project, of which approximately Ninety-Six Thousand Eight Hundred Eighty-One Dollars ($96,881.44) was given to Mr. Keys to pay for materials, labor, independent contracts, storage, and administrative/operating costs. A copy of the accounting was sent to Ms. Pope through her then attorney, Sandy V. Lee of The Law Firm of Blair and Lee.

22.     That all funds delivered to Mr. Keys by Ms. Pope were spent directly on the work performed on the project, including payment to prime contractors, direct cost of materials, labor, equipment and equipment rentals, operating costs, and furnishings and appliances purchased for the project.

23.     That, to date, Mr. Keys has not collected payment for the services he himself has rendered to Ms. Pope to manage the project over the 14-month period. The unpaid financial obligations owed by Defendant to Plaintiffs total Forty-Nine Thousand Two Hundred Seventy Three Dollars and Five Cents ($49,273.05).

24.     That additional, administrative costs were incurred after August 15, 2007, including but not limited to accountant's fees, legal fees and costs, storage fees, and interest payments.

25. That Defendant suspended the work being performed under the management of G. Keys PC/LOGIS NP and has refused to pay the remaining balance owed on the services provided to date. At the time of the suspension, a substantial portion of the work had been completed, including most of the infrastructure repairs and renovations. The final phase of the project, such as installation of drywall, painting, reattachment of interior doors, and installation of appliances and plumbing fixtures, was about to begin.

26. That as a result of Defendant's failure to pay the balance owed, Plaintiffs have suffered continuing and irreparable financial losses to their detriment.

27. That as a result of Defendant's failure to deal in good faith and in accordance with the agreement between the parties, Plaintiffs have suffered substantial business damages and losses.

## COUNT I: BREACH OF CONTRACT

28. Plaintiff hereby realleges the allegations contained in paragraphs 1 through 27 and incorporates same by reference as though they were fully set forth herein.

29. Plaintiffs G. KEYS PC/LOGIS NP and Gregg Keys, Consultant for G. Keys PC/LOGIS NP, and Defendant entered into a binding contract, the material terms of which were that Plaintiffs would provide design and construction management services to Defendant, and serve as her agent when dealing with prime contractors, as outlined in the agreement between the parties entered into on or about January 6, 2006, a copy of which is attached hereto and incorporated herein by reference.

30. As part of that contract, Defendant Maisha Pope impliedly covenanted to act in good faith and to deal fairly with Plaintiffs concerning the subject of the contract, including

paying for the cost of services, materials and furnishings received.

31.     As a result of the acts alleged above, Defendant breached the implied covenant of good faith and fair dealing.

32.     As a direct and proximate result of the breach of the implied covenant of good faith and fair dealing, Plaintiffs have suffered and continue to suffer damages.

## COUNT II: UNJUST ENRICHMENT
### (Quantum Meruit)

33.     Plaintiffs hereby reallege the allegations contained in paragraphs 1 through 32 and incorporates same by reference as though they were fully set forth herein.

34.     That pursuant to the doctrine of Quantum Meruit "no one who benefits by the labor and materials of another should be unjustly enriched thereby," but should be rendered reasonable compensation for the labor and materials provided. "The law implies a promise to pay a reasonable amount for the labor and materials furnished, even absent a specific contract therefor." Black's Law Dictionary, 5th Ed (1983).

35.     That in addition to the written terms of the agreement between the parties, the conditions surrounding the relationship established between the parties over more than a year of continual work resulted in an implied-in-law contract.

36.     That Defendant has enjoyed and continues to enjoy the improvements provided by the work performed by independent contractors located, contracted for and managed by Gregg Keys, Consultant and G. Keys PC/LOGIS NP; and Defendant has acquired quality materials and fixtures which were either installed on her property and made a part of the infrastructure of her property or were in the process of being installed in her property at the

time of her suspension of the work, on or about August 15, 2007.

37.     That an implied-in-law contract existed between the parties and Defendant failed to fully perform under said contract by arbitrarily suspending the work and refusing to pay fully for labor, materials and services rendered.

38.     As a direct and proximate result of the breach of contract, Defendant has gained unfair enrichment in that she has obtained materials, services and benefits for which she has not paid.

39.     As a direct and proximate result of the breach of the implied-in-law contract, Plaintiffs have suffered and continue to suffer damages. Plaintiff incurred storage fees for items purchased on Defendant's behalf. To the extent possible, Plaintiffs have sought to reduce said storage costs pending resolution of this matter. Plaintiffs also incurred photocopying costs in response to Defendant's request for copies of documents which she later failed to collect or pay for. Plaintiffs continue to incur accruing interest costs on the outstanding credit card debt incurred on Defendant's behalf to Plaintiffs' financial detriment. Estimated accrued costs to date are as follows:

    Credit Card Interest Paid from May 2006 through July 2008 -- $3,117.83

    Storage Fees Paid from August 2007 through October 2007 --    $250.60

    Photocopying Costs for Documents Requested by Defendant --    $122.60.

The total of the estimated accrued costs is Three Thousand Four Hundred Ninety-One Dollars and Three Cents ($3,491.03).

40.     Plaintiffs are entitled to recover these additional expenses and damages incurred as a direct and proximate result of Defendant's breach of the implied-in-law contract.

## COUNT III: TRESPASS TO CHATTELS

41. The allegations outlined in paragraphs 1 through 40 are referenced and incorporated herein.

42. That three (3) items belonging to an uninterested third party were borrowed by, and entrusted to the care of Plaintiffs to be used at the project site at 1926 Second Street, NW, Washington, DC. Said items are as follows: a ladder, a ShopVac machine with attachments and an unopened, full propane tank.

43. That after Defendant had suspended the project on or about August 15, 2007, Plaintiff Gregg Keys discovered that the three (3) items belonging to a third party had been inadvertently left on the premises at 1926 Second Street, NW, Washington, DC and, through counsel, requested that he be allowed to collect the items at a date and time mutually convenient to the parties.

44. That Defendant intentionally interfered with Plaintiffs' right to exclusive custody and control of chattels, and right to possession of personal property when she refused to allow Plaintiff Gregg Keys to collect the above-described items and remove them from the premises at her home at 1926 Second Street, NW, Washington, DC., or failed to return said items to Plaintiffs.

45. That Defendants' interference with Plaintiffs' possession, dominion and control of the chattels in refusing to allow Plaintiffs to collect the three items constitute a wrongful taking.

46. That in interfering with Plaintiffs' custody, control and possession of the third party's personal property or chattels Defendant has committed trespass to chattels.

47. That Plaintiffs are entitled to recovery in replevin of all of the third party's

10

personal property or chattels which were entrusted to Plaintiffs' care and left at 1926 Second Street, NW, Washington, DC as of August 15, 2007.

WHEREFORE, Plaintiffs demand judgment against Defendant for the sum of Fifty-Two Thousand Seven Hundred Sixty-Four Dollars and Eight Cents ($52,764.08), plus interests, costs, and attorney's fees, any and all additional damages that may be incurred between the date of filing of the Complaint and trial, plus prejudgment interest, punitive damages, and such other relief that this Court deems just and proper as compensation to Plaintiffs. Plaintiffs further demand return of the personal property which had been entrusted to the care, possession and control of Plaintiffs by their third-party owner.

Respectfully submitted,

Andrea Littlejohn, # 434226
106 Madison Street, NW
Washington, DC 20011
(202) 291-2134
Alittlejohn202@aol.com

## VERIFICATION

STATE OF MISSOURI
~~DISTRICT OF COLUMBIA~~, ss:
~~WASHINGTON, DC~~
COUNTY OF ST. LOUIS

___GREGG KEYS_____, being first duly sworn/affirmed on oath, says the foregoing Complaint is a just and true statement of the facts to the best of my knowledge, information and belief.

Witness my hand under the penalties of perjury this ___7___ day of ___Jul, 2008___, 2008.

## NOTARY'S STATEMENT

On this day personally appeared ___Gregg Keys___, who, having first been sworn, acknowledged the foregoing before me.

**NANCY K JANES**
Notary Public - Notary Seal
State of Missouri
Commissioned for St Louis County
My Commission Expires: March 01, 2011
07017884

_____
NOTARY PUBLIC

My commission expires   3-1-11

12

**G. Keys PC / LŌGIS NP**   2688 Linda Marie, Oakton, VA 22124

202.812.3639

January 6, 2006

**Maisha Pope**
1926 2nd Street NW
Washington DC, 20001-1625

Dear Maisha:

We completed the building and property survey. This is an important step in developing a design strategy, design, construction documents and cost estimates for your renovation. Below you will find a schedule of events and price percentages needed to complete your renovation. This approach saves 10-15% of the construction cost over traditional methods.

If you have any questions Please feel free to contact me.

    Property and Building Survey            $1145.00 (Hourly+Cost)

    Phase 1- Design

1. Design Strategy
2. Design
3. Design Presentation (Owner)
4. Working Drawings and Details
5. Interior Design - Finish selection (limited-additional cost may be required)
6. Specifications as required
7. Structural, mechanical and electrical design
8. Apply for building permit           (1-8) 9% of Construction Cost

Phase 2 - Bidding and Construction

1. Bidding (Project)
2. Cost Estimations and Estimate review

                           EXHIBIT 1

- Page 2                                                                                        January 6, 2006

3. Contractor/Tradesman/Craftsman Selection

4. Construction and Contractor Management

5. Purchasing as required                            (9-12) 10% Max of Construction Cost

Note:

1. Re-designs for unforeseen conditions or owner changes are limited and may pose additional cost.

2. Additional Consultants will be added as required

3. Repairs to existing systems as required ( may be additional)


Invoices and a request for payment will be submitted bi-weekly or monthly. Progress reviews with owner will be scheduled per construction schedule.

Fiduciary services will be provided by Serene Charles Esquire on a as needed basis. Assuming the project budget is $127,000 you will need to provide an escrow account of $12,700 to cover unforeseen construction cost plus an expense and services retainer in the amount of $3,086.00 (30% of all fees).

| | |
|---|---|
| Tentative Project Budget | **$127,000** |
| Escrow (10%) Contingency | $12,700 |
| Design/Construction and Furnishings (budget) | **$114,300.00** |
| Design (9%) | $10,287.00 |
| Construction/ Construction Management (10%) | $11,430.00 |
| Fiduciary (2.0%) budget estimate (may vary) | $2286.00 |
| Sub-contractors / tradesman / craftsmen/materials (79%) | $90,297.00 |

Invoices and a request for payment will be submitted to you on a bi-weekly or monthly basis. Progress reviews with the owner (you) will be scheduled per construction schedule. Amounts left in your escrow may be used for furnishings at your discretion. Amounts left in your expense and services retainer will be deducted upon final accounting.

Inquiries regarding invoices and expenditures may be referred to Serene Charles 511 Rittenhouse Washington DC, 20011. You may contact her at your discretion at 202-291-5449.


Sincerely,

(Signature given at next meeting or by mail)


Gregg Keys

Consultant

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS
G. Keys PC/LOGIS NP, a sole proprietorship
Gregg Keys, Consultant

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** _____
(EXCEPT IN U.S. PLAINTIFF CASES)
St. Louis County, Missouri

## DEFENDANTS
Maisha Pope

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** District of Columbia
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Andrea R. Littlejohn
106 Madison Street, NW
Washington, DC 20011

**ATTORNEYS (IF KNOWN)**

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☒ | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ☐ A. Antitrust
☐ 410 Antitrust

### ☐ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ☐ C. Administrative Agency Review
☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. Temporary Restraining Order/Preliminary Injunction
Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Immigration**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus- Alien Detainee
☐ 465 Other Immigration Actions

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant

☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.

☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not Administrative Agency Review or Privacy Act)

| ☐ G. *Habeas Corpus/ 2255* | ☐ H. *Employment Discrimination* | ☐ I. *FOIA/PRIVACY ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ☐ K. *Labor/ERISA (non-employment)* | ☐ L. *Other Civil Rights (non-employment)* | ☒ M. *Contract* | ☐ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ Multi district Litigation ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 U.S.C. §§ 1331 and 1332. Defendant breached management contract by failing to pay for services and materials rendered or purchased on her behalf, and was unjustly enriched thereby. Defendant also failed to return personal property.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** _____ Check YES only if demanded in complaint   **JURY DEMAND:** ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY** (See instruction) ☐ YES ☒ NO  If yes, please complete related case form.

DATE August 13, 2008   SIGNATURE OF ATTORNEY OF RECORD _Andrew R. Littlefield_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

\forms\js-44.wpd